IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BOND SAFEGUARD INSURANCE
COMPANY,

          Plaintiff,

v.

DIANE ELIZABETH WARD and
JAMES ROBERT WARD,

          Defendants.

1:09-cv-0093-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants Diane Elizabeth Ward and James Robert Ward's (collectively, "Defendants") Renewed Motions to Dismiss and Alternative Motion to Transfer and Motion to Abate and Stay Action ("Renewed Motion to Dismiss or Transfer") [14][1] and Defendants' Request for Oral Hearing [9].

---

[1] On January 13, 2009, Plaintiff filed its original complaint in this action alleging fraudulent transfer. Defendants filed their Motions to Dismiss and Alternative Motion to Transfer and Motion to Abate and Stay Action ("Motion to Dismiss or Transfer") [8] on February 16, 2009, in response to the complaint. These motions were renewed on April 6, 2009, after Plaintiff amended its complaint to allege a claim for tortious interference with contract and business relationships.

**I.  BACKGROUND**

Defendants James Robert Ward ("Robert Ward") and Diane Ward are married.  Robert Ward was the chief executive officer of Land Resource Group, Inc. ("Land Resource, Inc."), the authorized manager of a limited liability company called Land Resource, LLC ("LRC").  Amended Complaint at ¶¶ 7, 8.  LRC developed housing subdivisions, including the Grey Rock at Lake Lure Subdivision ("Grey Rock subdivision") in Rutherford County, North Carolina, and the Villages at Norris Lake Subdivision ("Norris Lake subdivision") in Campbell County, Tennessee.  Id. at ¶¶ 9, 10, 17.

LRC created LR Buffalo Creek, LLC ("Buffalo Creek") and Villages at Norris Lake, LLC ("Villages") as single-purpose entities to hold all contracts and other assets and liabilities for the purchase, development, and sale of the Grey Rock subdivision and the Norris Lake subdivision, respectively.  Id. at ¶¶ 12, 19.  Buffalo Creek began selling undeveloped lots in the Grey Rock subdivision in 2004.  Villages began selling undeveloped lots in the Norris Lake subdivision in 2005.  Id. at ¶¶ 13, 20.  Buffalo Creek and Villages promised lot purchasers that they would, within a reasonable time period, make certain infrastructure improvements in the subdivisions.  The improvements promised included a wastewater treatment system (the Norris Lake subdivision only), paved roads,

electric service lines, telephone lines, and water service lines.  Id. at ¶¶ 14, 21.  The governments of Rutherford County and Campbell County required Buffalo Creek and Villages to secure subdivision bonds to insure that these infrastructure improvements for the subdivisions would be made.  Id. at ¶¶ 15, 22.  Plaintiff Bond Safeguard Insurance Company ("Plaintiff") issued the bonds required by Rutherford and Campbell Counties.  Plaintiff issued seven (7) subdivision bonds on behalf of Buffalo Creek as principal, and Rutherford County as obligee.  Plaintiff issued twelve (12) subdivision bonds on behalf of Villages as principal, and Campbell County as obligee.  Id. at ¶¶ 16, 23.

Plaintiff claims that Robert Ward executed a General Agreement of Indemnity ("GAI") in favor of Plaintiff Bond Safeguard in which Ward promised to indemnify Plaintiff for any amount the bonding company was required to pay to the obligees under the bonds Plaintiff issued.  The GAI induced Plaintiff to serve as surety for the infrastructure obligations that Buffalo Creek and Villages assumed.  Id. at ¶ 24.  Robert Ward signed the GAI as an individual indemnitor and on behalf of LRC and all "Affiliates, Subsidiaries, Now Owned and/or Hereafter Created, Controlled, Managed or Acquired" by LRC.  Id. at ¶¶ 25, 26.  Plaintiff claims it relied on Robert Ward's execution of the GAI to issue the surety bonds.  Id. at ¶ 28.

Buffalo Creek collected approximately $90,000,000 from the sale of more than 400 lots in the Grey Rock subdivision, and Villages collected approximately $49,552,000 from the sale of approximately 389 lots in the Norris Lake subdivision. Id. at ¶¶ 29, 31. Plaintiff claims that despite these sizable income amounts, the infrastructure improvements in the subdivisions have not been completed. Id. at ¶¶ 30, 32. Plaintiff claims that little to no work has been performed in the Grey Rock subdivision, and that construction of the wastewater treatment plant was not even started in the Norris Lake subdivision. Id. at ¶¶ 30, 32.

Plaintiff alleges that, instead of being used to fund the completion of the subdivision improvements, lot sale revenues were diverted from Buffalo Creek and Villages and used for other inappropriate purposes, including improper distributions made to Robert Ward individually. Id. at ¶ 35. Plaintiff claims that during the 2007 fiscal year, Robert Ward received distributions in the range of $40 million, which Plaintiff alleges should have been used to develop the infrastructure improvements in the subdivisions. Id. at ¶¶ 36-38. Plaintiff claims that Robert Ward and his wife Diane used the funds distributed to them to pay off family debt obligations, to purchase real property and to purchase other property, including several expensive automobiles. Id. at ¶¶ 39-49.

Plaintiff demanded pursuant to the GAI that Robert Ward indemnify and hold it harmless against any losses, costs, or damages it incurs in connection with the subdivision bonds for Grey Rock or Norris Lake.[2] Plaintiff claims Robert Ward has told it he cannot satisfy his indemnity obligations under the GAI. Id. at ¶¶ 53, 54.

On October 30, 2008, LRC and its related entities filed for bankruptcy in the Middle District of Florida. Both Rutherford and Campbell Counties have demanded payment under the bonds issued by Plaintiff to pay for infrastructure improvements, that Plaintiff has not paid, and thus the counties have declared the bonds to be in default. Exhibits E, F to Affidavit of Robert Ward.[3] Plaintiff has

---

[2] Plaintiff apparently has not yet paid out any amounts under the bonds but only anticipates that it may. The action appears to seek a recovery from Defendants and to use the recovery to pay any amounts owed under the bonds.

[3] The Court may consider the documents declaring the bonds in default without converting this to a motion for summary judgment because they are central to Plaintiff's claims and their authenticity is not disputed. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("*where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim*, then the Court may consider the documents part of the pleadings for purposes of Rule 12 dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") (emphasis added); Atwater v. NFL Players Assoc., 2007 WL 1020848, at *7 (N.D.Ga. Mar. 29, 2007) (citing Maxcess, Inc. v. Lucent Tech., Inc., 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) ("[A] complaint need not even mention or attach a document in order for the court to consider the document at the motion to dismiss stage, if the document is central to plaintiff's claims and not disputed in terms of its authenticity.").

sued 34 defendants, including Robert Ward, LRC, Buffalo Creek, and Villages, in federal court in the Western District of North Carolina. Ex. E to Ward Aff.[4] In the North Carolina case, Plaintiff claims that Robert Ward and other defendants misapplied proceeds from lot sales in the Grey Rock and Norris Lake subdivisions, including by the improper making of distributions to Robert Ward personally, and other developer defendants. See North Carolina Complaint at ¶¶ 71, 120.

Plaintiff filed its complaint in this Court on January 13, 2009. In it, Plaintiff again alleges that Robert Ward caused funds from the sale of lots in the Grey Rock and Norris Lake subdivisions to be transferred to himself and his wife and that these funds were wrongfully used to pay personal obligations and to purchase real and personal property, including two pieces of valuable real estate in this district. Plaintiff claims these transfers were fraudulent and in violation of O.C.G.A. § 18-2-74. Plaintiff filed an Amended Complaint on March 23, 2009, adding a cause of action against both Defendants for tortious interference with Plaintiff's contractual and business relationships. Plaintiff claims the Wards interfered in its obligation to LRC under the bonds. Defendants have moved to dismiss or transfer this action

---

[4] The Court may take notice of the complaint filed in the Western District of North Carolina for the limited purpose of recognizing that there is pending litigation regarding this subject matter in another court. United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994) (a court may properly consider public court documents without converting a motion to dismiss into a motion for summary judgment).

and to dismiss Plaintiff's tortious interference claim.[5] In their motions, Defendants argue: 1) that Plaintiff's complaint should be dismissed for improper venue or, alternatively, that this case should be transferred to a proper venue; 2) that Plaintiff's claim should be dismissed for failure to plead fraud with particularity; 3) that Plaintiff's claim should be dismissed because Plaintiff has failed to join indispensable parties; and 4) that Plaintiff's claim for tortious interference should be dismissed for failure to state a claim upon which relief may be granted or for improper venue, or, alternatively, that Plaintiff's claims should be abated and this action stayed.

The Court addresses first whether venue in this district is proper.

## II.  DISCUSSION

### A.  Applicable Law

An action must be brought in a district where venue is proper. It is the obligation of the plaintiff to make a prima facie showing of venue based on "facts as alleged in the complaint." Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).

---

[5] The theory seems to be that by diverting funds that should have been available to LRC to pay for infrastructure improvements, Defendants "disrupted" the contractual relationship of Plaintiff to LRC by causing Plaintiff to become liable under the bonds. This theory is, at best, an odd interpretation of the tortious interference claim, which the Court is not required to address considering its ruling on the issue of venue.

28 U.S.C. § 1391(a) provides for proper venue in diversity actions. Section 1391(a) states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Plaintiff asserts federal diversity jurisdiction in this case, so the venue provisions of § 1391(a) apply.

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue. A "district court . . . in which is filed a case laying venue in the wrong . . . district shall dismiss" the action or "if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Whether to dismiss or transfer is within the discretion of the Court. See Pinson v. Rumsfeld, 192 Fed. App'x 811, 817 (11th Cir. 2006); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983).

## B. <u>Analysis</u>

Plaintiff claims venue is proper in this district "because the Defendants reside within this district." Am. Compl. at ¶ 5. Defendants have submitted affidavits showing they are citizens and residents of Florida. Robert Ward Affidavit at ¶24, Diane Ward Affidavit at ¶ 18. Plaintiff does not contest that Defendants' residence is in Florida. Based on the facts alleged in its Amended Complaint, Plaintiff has not made a prima facie showing that venue is proper in this district and, on this basis alone, the Amended Complaint should be dismissed. Plaintiff seeks to side-step this result by arguing in its response to Defendants' dismissal motion, that "[d]espite the Defendants' assertion of Florida residency, the Court holds jurisdiction over the non-resident Defendants under Georgia's Long-Arm Statute." Pl. Resp. at 3. Defendant appears to seek to invoke § 1391(a)(3). This subdivision provides for venue in a district in which "any defendant is subject to personal jurisdiction at the time the action is commenced" but only if "there is no other district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3).

"The primary focus of a venue inquiry is the convenience of litigants and witnesses, although it is more concerned with the litigant who has not chosen the forum than with the litigant who has . . . Unlike laying venue in a proper locale, the

exercise of personal jurisdiction implicates constitutional, not merely statutory, concerns." Wright, Miller & Cooper, Federal Practice and Procedure, 14D, 3d ed. § 3801. "It is well settled that an individual's mere residence in a state is not enough for purposes of establishing the propriety of venue there. Rather, it is the individual's 'permanent' residence—i.e., his domicile—that is the benchmark for determining proper venue." Manley v. Engram, 755 F.2d 1463, 1466 n. 3 (11th Cir. 1985). The fact is there are no allegations or arguments made by Plaintiff that this action could not be brought in the district in which Defendants are residents, and venue in this district is not proper under Section 1391(a)(3).

Plaintiff next advances a further fallback venue argument by claiming that venue is proper here because a "substantial portion of the property" against which it seeks a lien is located in the Northern District of Georgia. Pl. Resp. at 3. Specifically, Plaintiff claims that Diane Ward owns "two substantial pieces of property in the Northern District of Georgia." Id. at 4. Plaintiff's reliance on the location of property provision of Section 1391(a)(2) is misplaced. The action in this district is centered on the same conduct alleged in the action pending in federal court in North Carolina. Plaintiff alleges Defendant Robert Ward wrongfully diverted proceeds from sales of lots in the Grey Rock and Norris Lake subdivisions – funds which should have been used to make infrastructure improvements.

Plaintiff claims Defendant John Ward is required to indemnify it under the GAI and has failed to do so because Ward and his wife used the funds that wrongfully were transferred to them to buy real estate and personal property, and thus they do not have liquid funds to pay Ward's indebtedness under the GAI. The two properties in this district Plaintiff claims Ward wrongfully applied lot proceeds to are a parcel at 125 Powder Lane, Lakemont, Georgia, the mortgage for which allegedly was paid with diverted funds. The amount of the mortgage was $1,875,000. The second property is a home located at 605 River Chase NW, Atlanta, Georgia, the mortgage for which also was allegedly paid with diverted funds. The amount of this mortgage was $670,500.

Plaintiff seeks a lien against these properties and a money judgment in the amount Plaintiff claims it is entitled to be paid by Defendant John Ward under the GAI. The amount of the judgment Plaintiff seeks is in the range of $20 million. In short, the case is one for funds Plaintiff claims are owed to it, which Plaintiff seeks to secure in part by a lien on the Georgia real property.[6]

At the outset, the Court notes that Section 1391(a)(2) provides for venue in a judicial district where "a substantial part of property that is the subject of the action

---

[6] Plaintiff seeks a lien on other property outside of the district. Because the Court finds venue is improper here, the relief requested with respect to this other property is not required to be addressed.

is situated." Id. Here, Plaintiff alleges the diversion of funds is over $20 million to Defendants. Plaintiff alleges further that Defendants used these funds to buy various real and personal property, only two specific items of which are in this district. It is doubtful that the property here is a "substantial part of the property" that is the subject of the action. More importantly, § 1391(a)(2) does not apply because the action in this Court is not a property dispute.

The cases interpreting Section 1391(a)(2) are scant. Those that do construe the meaning of "property that is the subject of the action" under subsection (a)(2) to apply only "'to suits involving property disputes or in rem actions . . . not to suits alleging financial damages to a corporation.'" American High-Income Trust v. AlliedSignal Inc., 2002 WL 373473, at *3 (D.Del. Mar. 7, 2002) (quoting Falcoal, Inc. v. Turkiye Komur Islemeleri Kurumu, 660 F. Supp. 1536, 1543 (S.D.Tex. 1987)). See also Smith v. Johnston, 1997 U.S. Dist. LEXIS 12451, at *8 (E.D.Mich. June 25, 1997) (interpreting Section 1391(b)(2) – which the court noted for purposes of subsection (2) is identical to Section 1391(a)(2) – and finding that subsection (2) applies only when the federal action "put[s] in issue the title to, or possession of, such lands, or any interest therein.") (quoting Environmental Defense Fund v. Corps of Engineers of U.S. Army, 325 F. Supp. 728, 733 (E.D.Ark. 1971)).

In <u>American High-Income Trust</u>, plaintiffs were purchasers of corporate bonds in a company that filed for chapter 11 bankruptcy protection. 2002 WL 373473, at *1-2. Plaintiffs sued alleging the defendants were liable to them under federal securities laws, California statutes concerning misrepresentations in the sale of securities, and common law fraud, in connection with the sale of the bonds. <u>Id.</u> at *1. Plaintiffs argued that, as a result of the bankruptcy filing, venue was proper in Delaware because the books, records, and assets of the corporate defendant were subject to the jurisdiction of the bankruptcy court and thus constituted property located in Delaware. <u>Id.</u> at *3. The <u>American High-Income Trust</u> court rejected this argument, holding that the "property that is the subject of the action" language in the venue statute applies only to suits involving property disputes or in rem actions, not to suits alleging financial damages to a corporation. <u>Id.</u> <u>See also</u> <u>Spain v. Eagleburger Law Group</u>, 2006 WL 650191 (D.Colo. Mar. 9, 2006) (venue improper where plaintiff "does not sue to recover the property or clear title to it, nor does he ask me to declare rightful ownership of the property." Because a claim refers to property in a district does not make the property the "subject" of the action for venue purposes).

This case is not an action concerning a dispute over the Defendants' two properties in this district.[7] Plaintiff merely seeks a lien against them to satisfy the money judgment it seeks. Plaintiff does not seek to obtain title or to recover the homes located in the Northern District of Georgia, nor does he seek a declaration of ownership. That is, the core of this action is to recover financial damages, which Plaintiff claims it has suffered in an amount equaling or exceeding $20 million. See Am. Compl. at 18-19. The two properties located in this district are not the subject of this action, and the property provision of Section 1391(a)(2) is inapplicable.[8] Venue simply is not proper in this district.[9]

---

[7] Plaintiff relies on Orig. Appalachian Artworks, Inc. v. Wormser, No. C80-195A, 1980 WL 1143 *2 (N.D. Ga. Sept. 15, 1980) for the proposition that property in this district is sufficient to confer venue here. Appalachian Artworks interpreted 28 U.S.C. § 1391(b), which applies in cases where jurisdiction is not founded solely on diversity of citizenship. The action here is based solely on diversity.

[8] The cases which have found proper venue based on "substantial part of property that is the subject of the action" are actions in which the property located in the district is the subject or center of the dispute. See, e.g., Gulf Crossing Pipeline Co. LLC v. 7.50 Acres, 2008 WL 2774697 (E.D.Tex. 2008) (finding venue proper in case where a natural gas pipeline company sought acquisition of property rights to construct and operate its pipeline on property located within the district); Safeway Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439 (E.D.Va. 2003) (supermarket tenant sued shopping-mall landlord seeking declaratory judgment that tenant's withholding of consent for landlord's renovation of mall's common areas and parking lot was reasonable under Virginia law); 2215 Fifth Street Assoc. v. U Haul Intern., Inc., 148 F. Supp. 2d 50 (D.D.C. 2001) (action concerning ownership of real property within the district).

Finally, the Court must decide, under 28 U.S.C. § 1406(a), the proper disposition of Defendants' motion. Considering all the information available, the Court finds that the interests of justice require this action to be transferred to a district where it could have been brought. The Court thus determines this action should be transferred to the United States District Court for the Middle District of Florida, the district in which the Defendants reside.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Diane Elizabeth Ward and James Robert Ward's Motion to Dismiss or Transfer [8] and Renewed Motion to Dismiss or Transfer [14] are **GRANTED IN PART**. Plaintiff's Amended

---

[9] The only remaining possibility for proper venue – which Plaintiff does not even appear to claim – is whether a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. However, even if Plaintiff did make this assertion, it appears clear from the allegations in the Amended Complaint that a substantial part of the events or omissions did not take place in this district. See Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) (noting that "venue is proper 'in a judicial district in which a *substantial* part of the *events or omissions giving rise to the claim occurred*.") (quoting Section 1391(a)(2) (emphasis in original)); MTGLQ Investors, L.P. v. Guire, 286 F. Supp. 2d 561, 564-65 (D.Md. 2003) (finding venue improper in an action to recover under promissory notes, even though one of the three properties securing the note was located in the district, as neither party resided in the district, the agreement was not negotiated or executed in the district, and none of the central events or facts at issue occurred in the forum).

Complaint is hereby transferred to the United States District Court for the Middle District of Florida, where the Defendants reside.[10]

**IT IS FURTHER ORDERED** that Defendants' Request for Oral Hearing [9] is **DENIED AS MOOT**.

**SO ORDERED** this 14th day of May, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[10] By virtue of the Court's ruling, Defendants' remaining motions are moot.